IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ADVANCED SOFTWARE DESIGN CORPORATION, et al., | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 4:07cv0185 CDP |
| FISERV, INC., | ) ) ) | |
| Defendant. | ) | |

## FISERV'S SUPPLEMENTAL BRIEF REGARDING NON-INFRINGEMENT

The Court has directed the parties to file supplemental briefs addressing *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318 (Fed. Cir. 2008) and *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007). These cases are applicable because Plaintiffs' infringement case now appears to include a theory of joint infringement that is based on different parties performing the various steps of the invention disclosed in independent claims 1 and 9.

"Direct infringement requires a party to perform or use each and every step or element of a claimed method or product." *BMC Resources, Inc.*, 498 F.3d at 1378. Fiserv (including Fiserv Item Processing) cannot be held liable for direct patent infringement because it does not perform each and every step of the process in the asserted claims, including the process steps of claim 9. Simply making, selling, or offering for sale the Secure Seal software product is not enough because "a party that sells or offers to sell software containing instructions to perform a patented method does not infringe the patent under § 271(a)." *Ricoh Co., v. Quanta Computer Inc.*, 550 F.3d 1325, 1335 (Fed. Cir. 2008). In addition, Fiserv cannot be liable under Plaintiffs' theory of joint direct infringement because it does not direct or control any of the other parties who perform steps in the alleged infringing processes.

"Indirect infringement requires, as a predicate, a finding that some party amongst the accused actors has committed the entire act of direct infringement." *BMC Resources, Inc.*, 498 F.3d at 1379. Fiserv cannot be held liable for inducing patent infringement because Plaintiffs

cannot establish *both* a predicate act of direct infringement by some third-party *and* that Fiserv possessed the specific intent to encourage that third-party's infringement.

## ARGUMENT

### A.   Fiserv Does Not Directly Infringe The '110 Patent.

#### 1.   The Preambles Include Steps in the Process and System of the Asserted Claims.

Plaintiffs recently advanced a claim construction theory designed to avoid the impact of the requirement that the direct infringer perform each step of the patented process. Plaintiffs' new theory is that the limitations in the preamble merely create "environmental conditions" and are not steps in the invention that a party must perform in order to infringe the patent. In determining whether the preambles include limitations of the claimed process and system that must be performed to establish direct infringement, the Court should first look to the claims, then the specification, and finally the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-1315 (Fed. Cir. 2005). The language of claims 1 and 9 demonstrates that the preambles includes limitations of the claimed process and system as shown below:

| Preamble to Claim 1 of the '110 Patent | Preamble to Claim 9 of the '110 Patent |
|---|---|
| *A process* of validating a negotiable financial instrument made by a payor, *in which* selected information found on the financial instrument which varies for each instantiation of the financial instrument made by the same payor is encrypted in combination with key information not found on the financial instrument to generate a control code which is printed on the financial instrument along with the selected information, the process comprising: | *A system* for validating the authenticity of selected information found on a negotiable financial instrument, *wherein* the selected information varies for each instantiation of the financial instrument presented by the same payor, and wherein the selected information is encrypted in combination with key information not found on the financial instrument to generate a control code which is printed on the financial instrument along with the selected information, the system comprising: |

Thus, the preambles of claims 1 and 9 describe either a process *in which* certain steps are required or a system *wherein* certain process steps are required. The plain language of the claims demonstrates that the preambles include steps in the claimed process and system.

Further, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Intern. Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003). In claims 1 and 9, the terms "the selected information" and "the control code," rely upon and derive their meaning from the fuller explanation of these terms in the preamble. In addition, because the limitations of the preambles perform steps, their plain meaning should not be abrogated to find that the preambles recite merely environmental conditions, as Plaintiffs contend. The terms in the preambles are preceded by action verbs which "**encrypt**" the "selected information" "in combination with key information" "**to generate** a control code which **is printed** on the financial instrument . . . ." '110 patent, claims 1 and 9 (emphasis added). Thus, per *Phillips*, the language of the preamble must be construed to recite steps of the claimed method and system. 415 F.3d at 1314-1315.

Turning to the next step in the *Phillips* analysis, the '110 patent's specification also establishes that the preambles of claims 1 and 9 are limitations of the claimed process. The following examples include as part of the *invention* the process steps from the preambles:

- "The *invention* applies or prints certain security features onto a negotiable instrument, e.g. a cheque, at the time it is created." '110 patent at 3:18-20 (emphasis added).

- "Hence, according to one aspect of the *invention*, there is provided a process for enhancing the protection of selected information associated with a negotiable instrument from forgery, comprising the steps of: a) selecting an encryption key; b) encrypting a combination of the selected information and the encryption key with a relatively secure cryptographic scheme to thereby generate a first control code; and c) printing the selected information and the first control code on the negotiable instrument." *Id.* at 3:45-53 (emphasis added).

The prosecution history, the final element of the *Phillips* analysis, also demonstrates that the preambles include limitations of the claimed process. The Federal Circuit has held that when a patentee relies on limitations in the preamble to obtain a patent, the preamble limits the claim. *Bass Pro Trademarks, L.L.C. v. Cabela's, Inc.*, 485 F.3d 1364, 1369 (Fed. Cir. 2007). Here, the

Notice of Allowance for the '110 patent establishes that the patent was issued based on the process steps in the preamble. It states:

> The prior art in the field, singly and in reasonable combination, does not teach the feature found in the independent claims of taking selected information found on a financial instrument, which varies for each instantiation of the instrument for the same payor, is encrypted in combination with key information not found on the financial instrument in order to create a control code or digital signature that is then printed on the financial instrument along with the information. All in the manner of the Applicant as taught by the specification and found in the independent claims.

Docket No. 99 at 12 (Plfs. Resp. to Def. Claim Constr. Brf., quoting '110 patent's Notice of Allowability) (emphasis omitted). In other words, the '110 patent's examiner allowed the claims *because* of the limitations included in the preamble that performed steps of the claimed method and system.

The use of the term "comprising" at the end of the preamble does not change this analysis. There are numerous cases in which the Federal Circuit has found that a preamble concluding with the term "comprising" included claim limitations. *See e.g., Bass Pro Trademark*, 485 F.3d at 1369 (finding that a preamble that concluded with the term "comprising" included a claim limitation); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006). The word "comprising" does not mean all of the claim language appearing before it is merely background or setting environmental conditions.

Given that claims 1 and 9 as properly construed recite steps to be performed in the claimed process, Fiserv cannot itself directly infringe the '110 patent. It is undisputed that Fiserv IP—the only Fiserv business alleged to practice any of the steps of the '110 patent—does not perform the steps of printing checks using Secure Seal. Docket No. 157 at ¶ 5 (Bleiberg Decl.). Thus, Fiserv (acting through Fiserv IP) cannot itself directly infringe because Fiserv IP does not perform the steps required to print a control code, *i.e.*, combining selected information with key information, and encrypting the combination to generate a control code which is printed on the check. In addition, Fiserv IP cannot perform the step of refusing to honor a check. That is left to the bank. *Id.* at ¶¶ 4-5.

## 2.  Fiserv Does Not Jointly Infringe the '110 Patent.

As shown above, under the proper construction of the preambles, Fiserv cannot itself directly infringe the '110 patent. Indeed, as demonstrated below, the evidence before this Court related to the operation of Secure Seal demonstrates that multiple parties are required to (a) generate and print Secure Seals and (b) validate those Secure Seals, with no single party performing all of these steps. Fiserv (acting through Fiserv IP) only decodes Secure Seals generated and printed by other parties. As a result, under *BMC Resources* and *Muniauction*, Fiserv cannot be liable for direct infringement unless Fiserv directs or controls the parties performing the steps Fiserv does not itself perform.

### a.  Secure Seal's Operation and Use.

The evidence before this Court shows that there are two ways Secure Seal is used. In most instances, Fiserv sells Secure Seal software to a bank (Bank A). A customer (BigCo) of Bank A will generate a Secure Seal and then print this Secure Seal on one of its checks using some third-party printing application. *See* Docket No. 124 at ¶ 24 (Decl. of S. Jagannathan Regarding Non-Infringement). This check will be issued to a payee who deposits the check at his or her bank. *Id.* The check is processed and ultimately reaches the issuing bank (Bank A). *Id.* Bank A scans the check using a scanner and scanner software not provided by Fiserv to generate a check image. *Id.* Bank A then processes the check image using Secure Seal to decode the seal and then makes this decoded information available for comparison by a separate application. *Id.* Thus, in most instances, two separate entities, BigCo and Bank A—neither of which is Fiserv—are necessary to print and validate checks using Secure Seal. BigCo and Bank A are independent parties and neither one directs or controls the actions of the other.

In the second instance, when Fiserv IP has been retained by a bank to perform its item processing, Fiserv (acting through Fiserv IP) also does not infringe. In this situation, a customer of a bank will generate a Secure Seal and then print this Secure Seal on one of its checks using some third-party printing application. The check is then issued to a payee who deposits the check at his or her bank. The check is processed and ultimately reaches Fiserv IP. Docket No. 129 at Ex. B at 27 (Dep. Tr. of P. Bleiberg). Fiserv IP scans the check and using the image of

the scanned check decodes the Secure Seal and makes this decoded information available for comparison by a separate application. *Id.* at 27-29; Docket No. 124 at ¶ 24 (Decl. of S. Jagannathan Regarding Non-Infringement). If the data extracted from the decoded seal does not match the information from the face of the check, the item is marked as an exception and then someone at the bank would access a Fiserv IP website to view the item and decide whether to pay on the check. Docket No. 129 at Ex. B at 29 (Dep. Tr. of P. Bleiberg).

Thus, even when Fiserv IP is retained to do the item processing, it is only one of three entities—the other two are the bank and the bank's customer—performing some of the various steps of the patented process alleged to be infringing. The bank's customer would perform the steps of **creating** and **printing** a Secure Seal. Fiserv IP would **extract** the data from the Secure Seal, **compare** it with the information from the check and, if there is not a match, **notify** the bank. The bank **decides** whether to **refuse to honor** the check.

### b.     BMC Resources and Muniauction.

Because the asserted claims of the '110 patent require multiple parties, Plaintiffs now appear to rely on a theory of joint infringement. Both *BMC Resources* and *Muniauction* address the situation where performance of a patented process exists by combining the conduct of multiple parties.

In *BMC Resources*, the parties agreed that the defendant did not perform every step of the method at issue in that case. *BMC Resources*, 498 F.3d at 1377-78. Notwithstanding this fact, the plaintiff still sought to hold the defendant liable by arguing that the Federal Circuit in *On Demand Machine Corp. v. Ingram Industries, Inc.*, 442 F.3d 1331 (Fed. Cir. 2007) had "adopted a 'participation and combined action' standard as the type of 'connection' a plaintiff must show to prove joint infringement." *BMC Resources*, 498 F.3d at 1380. The Federal Circuit rejected this argument, holding that: "[i]nfringement requires, as it always has, a showing that a defendant has practiced each and every element of the claimed invention." *Id.* The Court reasoned that, "[w]here a defendant participates in infringement but does not directly infringe the patent, the law provides remedies under principles of indirect infringement." *Id.* Notably, the

Federal Circuit reaffirmed that "inducement of infringement requires a predicate finding of direct infringement." *Id.* Notwithstanding the foregoing, the Federal Circuit also held that:

> A party cannot avoid infringement, however, simply by contracting out steps of a patented process to another entity. In those cases, the party in control would be liable for direct infringement. It would be unfair indeed for the mastermind in such situations to escape liability. District courts in those cases have held a party liable for infringement.

*Id.* at 1381. Finally, the Federal Circuit stated that:

> The concerns over a party avoiding infringement by arms-length cooperation can usually be offset by proper claim drafting. A patentee can usually structure a claim to capture infringement by a single party. In this case, for example, BMC could have drafted its claims to focus on one entity. The steps of the claim might have featured references to a single party's supplying or receiving each element of the claimed process. However, BMC chose instead to have four different parties perform different acts within one claim. BMC correctly notes the difficulty of proving infringement of this claim format. Nonetheless, this court will not unilaterally restructure the claim or the standards for joint infringement to remedy these ill-conceived claims.

*Id.* (internal citations omitted). Thus, *BMC Resources* stands for the proposition that when the plaintiff's theory requires multiple parties to perform all of the steps that would constitute infringement, there can be no infringement unless the accused direct infringer is a "mastermind" who controls or directs the other parties performing the steps necessary to infringe the asserted claim, nor may a court restructure the claim to fix a problem with the way it was drafted. Based on this holding, the Federal Circuit affirmed the district court's entry of summary judgment of no infringement because there was insufficient evidence that the defendant exercised the necessary direction or control over the other entities required to infringe.

The *Muniauction* case came to the Federal Circuit on appeal from a jury trial conducted before *BMC Resources* was decided. Like the plaintiff in *BMC Resources*, the district court in *Muniauction* relied on the Federal Circuit's dicta from *On Demand* to conclude that a connection less than "direct control" was sufficient to prove liability under a joint infringement theory, and instructed the jury accordingly. The Federal Circuit in *Muniauction* rejected this conclusion and held that: "where the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'"

*Muniauction*, 532 F.3d at 1329. "[T]he control or direction standard is satisfied in situations where the law would traditionally hold the accused direct infringer vicariously liable for the acts committed by another party that are required to complete performance of a claimed method." *Id.* at 1330. Importantly, "mere 'arms-length cooperation' will not give rise to direct infringement by any party." *Id.* at 1329.

### c. Fiserv Does Not Control or Direct Any of the Third-Party Users of Secure Seal.

As discussed above, there is evidence before this Court of two kinds of use of Secure Seal: (1) where Secure Seal is used by a bank's customer to generate and print Secure Seals and then the bank processes the checks with the Secure Seals; and (2) where Secure Seal is used by a bank's customer to generate and print Secure Seals and then Fiserv IP processes the checks with the Secure Seal for the bank which then determines whether to pay any checks when the decoded Secure Seal does not match the information from the face of the check. In neither of these situations does Fiserv exercise the requisite control or direction over the third-parties.

To establish direct infringement, Plaintiffs must prove that Fiserv exercises direct control over both a bank and its customers. Under *Muniauction* this means that Plaintiffs must prove that the law would traditionally hold Fiserv vicariously liable for the acts committed both by the bank's customer to generate and print Secure Seals, and by the bank in processing in the checks printed with Secure Seals. There is no evidence that Fiserv has such an extraordinary relationship with these entities that it could be held vicariously liable for such ordinary business activities of these unrelated entities. In that regard, "[a]t the summary judgment phase, the party with the burden of proof on an issue must provide evidence sufficient, if unopposed, to prevail as a matter of law." *Ricoh*, 550 F.3d at 1336. Plaintiffs have not done so and as a result, summary judgment should be granted in Fiserv's favor.

Plaintiffs may claim "direction or control" based on the argument they made in connection with their argument that Fiserv has induced infringement. *See* Docket No. 161 at 21 (Plfs.' Opp'n to Fiserv's Mtn. for Summ. J. Regarding Non-Infringement). There, Plaintiffs assert that: "Fiserv created the encoding and decoding templates after the customer purchased the

Secure Seal product and assisted in installing the software and template at the customer's location." *Id.* Plaintiffs also assert that "Fiserv has also indemnified all of its customers against claims of infringement." *Id.*

Neither of these circumstances is sufficient to establish "direction or control". "[M]ere 'arms-length cooperation' will not give rise to direct infringement by any party." *Muniauction* 532 F.3d at 1329. Further, "[g]iving instructions or prompts to the third party in its performance of the steps necessary to complete infringement, or facilitating or arranging for the third-party's involvement in the alleged infringement, are not sufficient." *Friday Group v. Ticketmaster*, No. 4:08CV01203 JCH, 2008 WL 5233078, at *2 (E.D. Mo. Dec. 12, 2008). "[P]roviding data to third parties to perform some of the claimed steps of the patented method, instructing these third parties on certain aspects of their performance, and facilitating or arranging for these third parties to perform the steps, generally do not establish the type of direction or control necessary for direct infringement." *Id.*; *BMC Resources*, 498 F.3d at 1378 (affirming the trial court's finding "that Paymentech would only infringe if the record showed that it directed or controlled the behavior of the financial institutions that performed those claimed method steps that Paymentech did not perform").

Further, "[t]o establish vicarious liability, Plaintiff[s] must demonstrate that there was a principal-agent relationship...." *Hunter v. Ramada Worldwide, Inc.*, No. 1:04CV00062ERW, 2005 WL 1490053, at *6 (E.D. Mo. June 23, 2005). "An agency relationship is defined by two elements: (1) the principal consents, expressly or impliedly, to the agent acting on its behalf; and (2) the agent is subject to the principal's control." *Id.* Fiserv does not have a principal-agent relationship with the banks or the banks' customers.

**B.      Fiserv Has Not Induced Infringement.**

Under *BMC Resources*, a claim of inducing infringement requires "a finding that some party amongst the accused actors has committed the entire act of direct infringement." 498 F.3d at 1379. As set forth in Fiserv's Motion for Summary Judgment of Non-Infringement (Docket No. 155 at 3-5), Plaintiffs never disclosed during discovery or as required by the Court's scheduling order the basis for its claim of inducing infringement. Under *BMC Resources,* any

such disclosures would have to include the actors whose conduct taken together would constitute the entire act of direct infringement. In fact, it was not until the Court's questioning of Plaintiffs' counsel at the July 7, 2009 hearing that Fiserv heard for the first time Plaintiffs' speculation as to how Fiserv might be found to control the acts of a bank and its customers. It would be unfairly prejudicial to Fiserv if Plaintiffs advance for the first time, in their supplemental brief, a factual and legal theory of inducing infringement about which Fiserv had no notice during discovery when it could have addressed such theories. Nonetheless, Plaintiffs cannot prove induced infringement because to do so, "the plaintiff must prove both direct infringement and 'that the defendant possessed specific intent to encourage another's infringement.'" *Kinetic Concepts, Inc. v. Blue Sky Medical Group, Inc.*, 554 F.3d 1010, 1024 (Fed. Cir. 2009). For the reasons stated above in this memorandum, because there is no direct infringer there can be no indirect infringement.

Further, Plaintiffs cannot establish that Fiserv had the specific intent necessary to induce the asserted infringement. "[A] patent holder must prove that once the defendants knew of the patent, they 'actively and knowingly aid[ed] and abett[ed] another's direct infringement.' However, 'knowledge of the acts alleged to constitute infringement' is not enough. The 'mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.'" *DSU Medical Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). The evidence that Plaintiffs argue establishes inducement is that "Fiserv created the encoding and decoding templates after the customer purchased the Secure Seal product and assisted in installing the software and template at the customer's location," and that "Fiserv has also indemnified all of its customers against claims of infringement." *See* Docket No. 161 at 21 (Plfs.' Opp'n to Fiserv's Mtn. for Summ. J. Regarding Non-Infringement). This is not enough under *Kinetic Concepts* and *DSU Medical Corp.*.

WHEREFORE, for the reasons set forth above and in the accompanying materials, Fiserv, Inc. respectfully requests this Court enter summary judgment that Claims 1, 5-9, and 13-15 of U.S. Patent No. 6,792,110 are not infringed by Fiserv, Inc., either directly or indirectly.

DATED: July 17, 2009

Respectfully submitted,

ATTORNEYS FOR DEFENDANT FISERV, INC.

*/s/ Brian D. Roche*

REED SMITH LLP

Brian D. Roche
Michael M. Geoffrey
Michael P. Bregenzer
Raven Moore
10 S. Wacker Drive
Suite 4000
Chicago, IL 60606-7507
312.207.1000 (t)
312.207.6400 (f)

ARMSTRONG TEASDALE LLP

John H. Quinn III #4110
Michael H. Longmeyer
One Metropolitan Square
Suite 2600
St. Louis, MO 63102-2740
314.621.5070 (t)
314.621.5065 (f)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of July, 2009, the foregoing was served by the Court's electronic filing system upon:

Keith A. Rabenberg
Michael J. Hartley
Attorneys for Plaintiffs
Senniger Powers LLP
100 North Broadway, 17th Floor
St. Louis, MO 63102

*/s/ Brian D. Roche*

REED SMITH LLP

Brian D. Roche
Michael M. Geoffrey
Michael P. Bregenzer
Raven Moore
10 S. Wacker Drive
Suite 4000
Chicago, IL 60606-7507
312.207.1000 (t)
312.207.6400 (f)

ARMSTRONG TEASDALE LLP

John H. Quinn, III
Michael H. Longmeyer
One Metropolitan Square
Suite 2600
St. Louis, MO 63102-2740
314.621.5070 (t)
314.621.5065 (f)